IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

**Sharee Mae Gorman**                                                                                    **Plaintiff**

v.                                      No. 4:15-CV–399-KBG-JTK

**Carolyn W. Colvin, Acting Commissioner,**
**Social Security Administration**                                                         **Defendant**

## Recommended Disposition

### Instructions

The following recommended disposition was prepared for U.S. District Judge Kristine G. Baker.  A party to this dispute may file written objections to this recommendation.  An objection must be specific and state the factual and/or legal basis for the objection.  An objection to a factual finding must identify the finding and the evidence supporting the objection.  Objections must be filed with the clerk of the court no later than 14 days from the date of this recommendation.[1]  The objecting party must serve the opposing party with a copy of an objection.  Failing to object within 14 days waives the right to appeal questions of fact.[2]  If no objections are filed, Judge Baker may adopt the recommended disposition without independently reviewing all of the record evidence.

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right to de novo review and to appeal magistrate judge's findings of fact).

**Reasoning for Recommended Disposition**

Sharee Mae Gorman seeks judicial review of the denial of her second application for disability insurance benefits (DIB).[3] In her first application, Gorman alleged disability beginning January 2010,[4] but in June 2011 she began full-time work at a grocery store. When she filed the second application, she worked part-time at the same store.[5] Gorman based disability on rheumatoid arthritis, osteoarthritis, osteopenia, depression, fatigue, migraines, obstructive sleep apnea, and vitamin B-12/D deficiency.[6]

**The Commissioner's decision**. This case considers nine months: from July 28, 2013 — Gorman's alleged onset date — to March 31, 2014 — the date insured status expired. The latter date is important because a person must be insured to obtain DIB. Even if Gorman develops disabling symptoms after March 31, 2014, she does not qualify for DIB because she is no longer insured.

The ALJ's decision states an erroneous alleged onset date — March 31, 2013[7] —

---

[3]SSA record at p. 151 (applying on Aug. 22, 2013 and alleging disability beginning July 28, 2013).

[4]*See id*. at pp. 155, 169 & 197 (indicating she applied on Dec. 28, 2010 and alleged disability beginning January 1, 2010; application denied on Apr. 22, 2011).

[5]*Id*. at pp. 47, 187, 220 & 230.

[6]*Id*. at p. 200.

[7]*Id*. at p. 24.

but the ALJ clarified the actual alleged onset date during the hearing.[8] The stated date constitutes a scrivener's error that has no bearing on the result.

The ALJ identified osteoarthritis and fibromyalgia as severe impairments.[9] The ALJ determined Gorman could do sedentary work before insured status expired, to include past work as a service clerk.[10] Because a person who can do her past work is not disabled under social security law, the ALJ denied the application.[11]

After the Appeals Council denied review,[12] the ALJ's decision became the Commissioner's final decision for the purpose of judicial review.[13] Gorman filed this case to challenge the decision.[14] The recommended disposition explains why the court should affirm the decision.

**Gorman's allegations**. Gorman complains about the ALJ's consideration of

---

[8]*Id*. at p. 49.

[9]*Id*. at p. 26.

[10]*Id*. at pp. 28 & 36.

[11]*Id*. at p. 36.

[12]*Id*. at p. 1.

[13]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[14]Docket entry # 1.

treating-physician medical statements. She contends the ALJ failed to consider evidence detracting from the decision. She challenges the evaluation of her credibility. She maintains numerous symptoms prevent her from working. She says substantial evidence does not support the decision.[15]

**Applicable legal principles**. When reviewing a decision denying an application for DIB, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[16] For substantial evidence to exist, a reasonable mind must accept the evidence as adequate to support the determination that Gorman can do sedentary work and that Gorman can do her past work.[17] For the following reasons, a reasonable mind will accept the evidence as adequate to support the decision:

> 1. **The record establishes no very serious functional limitation preventing sedentary work**. Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like

---

[15] Docket entry # 12.

[16] *See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[17] *Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990) (substantial evidence exists if a reasonable mind will accept evidence as adequate to support conclusion).

docket files, ledgers, and small tools."[18]  Sedentary work "represents a significantly restricted range of work.  Individuals who are limited to no more than sedentary work by their medical impairments have very serious functional limitations."[19]

Gorman based her claim, in significant part, on hand and foot pain flowing from rheumatoid arthritis, but Gorman has osteoarthritis, not rheumatoid arthritis.[20]  She's been treated for osteoarthritis since 2007.  Gorman worked full-time despite osteoarthritis.  According to a rheumatologist, symptoms suggest fibromyalgia,[21] but the rheumatologist never diagnosed fibromyalgia.

Prescribed medication controls Gorman's symptoms fairly well,[22] but untreated sleep apnea aggravates her symptoms.[23]  Treatment notes indicate using prescribed continuous positive airway pressure (CPAP)

---

[18]20 C.F.R. § 404.1567(a).

[19]SSR 96-9p, *Pol'y Interpretation Ruling Titles II & XVI: Determining Capability to Do Other Work--Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work.*

[20]SSA record at p. 456 (May 2, 2013: she has osteoarthritis but also stigmata suggesting fibromyalgia), p. 451 (July 17, 2013: rheumatoid factor slightly positive, but might be a false positive; more likely she has osteoarthritis than rheumatoid arthritis), p. 533 (Dec. 12, 2013: labs showed slightly positive rheumatoid factor and normal sedimentation rate; she more likely has osteoarthritis than rheumatoid arthritis) & p. 621 (June 2, 2014: osteoarthritis reasonably well controlled with medication).

[21]*Id*. at p. 456.

[22]*Id*. at p. 621.

[23]*Id*. at p. 457 (Oct. 1, 2012: increasingly tired after stopping CPAP; hands and feet hurt most), p. 456 (May 2, 2013: she isn't using her CPAP and isn't feeling well), p. 453 (July 17, 2013: discussed consequences of untreated sleep apnea, including pain and fatigue; she needs to see sleep specialist because she's not using her CPAP) & p. 621 (June 2, 2014: not using CPAP likely makes her pain worse).

will decrease fatigue and pain, but Gorman doesn't use her CPAP.[24]

According to agency medical experts, Gorman could do light work before insured status expired.[25] A reasonable mind will accept the evidence as adequate to support the decision because the ALJ limited Gorman to sedentary work and because a person who can do light work can do sedentary work.[26]

2. **The ALJ properly considered treating-physician medical statements**. The ALJ must consider all credible evidence, to include medical opinion evidence, when considering whether a claimant is disabled.[27] The Commissioner's rules instruct the ALJ to give a treating physician's medical opinion controlling weight if it "is well- supported and not inconsistent with the other substantial evidence in the case record."[28]

The record includes four medical opinions: two from agency medical experts and two from treating physicians. The agency medical experts opined that Gorman could do light work.[29] The treating physicians reported disabling symptoms.[30] The ALJ rejected the treating-physician statements because reported limitations contradict demonstrated functional activity and because the statements reflect subjective

---

[24]*Id*. at p. 533.

[25]*Id*. at pp. 71-72 & 87-88.

[26]20 C.F.R. § 404.1567(b) ("If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.").

[27]20 C.F.R. § 404.1527.

[28]SSR 96-2p, *Pol'y Interpretation Ruling Titles II & XVI, Giving Controlling Weight to Treating Source Med. Opinions*.

[29]SSA record at pp. 71-72 & 87-88.

[30]*Id*. at pp. 667 & 674.

complaints.[31]  If supported by the record, these reasons are good reasons for rejecting the statements.

Substantial evidence supports the ALJ's reasons.  Treating physicians reported that Gorman could use her hands/fingers for 5% of an 8-hour workday;[32] 5% equates to 24 minutes.  At the time of the statement, Gorman used her hands/fingers for more than 24 minutes per day.  She worked at a grocery store delicatessen for 4 hours a day, 5 days a week.[33]  Working at a deli necessarily requires a worker to use the hands and fingers.

Treating physicians reported that Gorman could stand/walk for no more than 2 hours a day.[34]  According to Gorman, working full-time required 6 hours of walking and 2 hours of standing.  The reduction to 4 hours a day would require 3 hours of walking and 1 hour of standing, for a total of 4 hours a day.  Four hours a day exceeds the reported limitation.

Gorman contends the ALJ should have explained why the medical statements reflect subjective allegations, but in the absence of medical findings documenting functional limitation, the only basis for the reported limitations was subjective allegations.  The ALJ had a sufficient basis for rejecting the reported limitations.

3. **The ALJ properly discounted Gorman's credibility**.  The ALJ followed the required two-step process and considered the required factors[35] to evaluate Gorman's credibility.  The question before the court is whether substantial evidence supports the ALJ's credibility evaluation.

---

[31]*Id*. at p. 35.

[32]*Id*. at pp. 671-72 & 678-79.

[33]*Id*. at pp. 201 & 209.

[34]*Id*. at pp. 670 & 677.

[35]*See* SSR 96-7p, *Policy Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*.

The ALJ gave little probative weight to Gorman's testimony because her "ability to work, prepare meals, shop, drive and tend to her personal needs, clean her house and do laundry in conjunction with the medical evidence demonstrating minimal abnormalities, reflects a significant functional capacity and not an individual unable to sustain regular and continuing work due to medically determinable impairments."[36] The cited activities are supported by the record, contradict disabling symptoms, and provide a sufficient basis for discounting Gorman's credibility.

Gorman complains because the ALJ didn't include all alleged symptoms in determining her ability to work, but her argument fails because the ALJ properly discounted her credibility. She claims the ALJ failed to consider evidence detracting from the decision, but subjective statements are the only evidence detracting from the decision. Gorman undermined her credibility by working part-time, driving, cooking, doing laundry, cleaning her home, and disregarding medical advice about using her CPAP. Medical evidence documents no serious functional limitation preventing sedentary work.

4. **Vocational evidence indicates Gorman can do her past work.** A person who can do her past work is not disabled under social security law.[37] Gorman worked as a service clerk for a telephone company for over 20 years.[38] She lost her job when the company restructured.[39] According to the vocational expert, a service clerk is a sedentary job.[40] A person who can do sedentary work has the capacity to work as a service clerk.

---

[36]SSA record at p. 35.

[37]20 C.F.R. § 404.1520(a)(4) ("If you can still do your past relevant work, we will find that you are not disabled.").

[38]SSA record at pp. 201 & 220.

[39]*Id.* at pp. 59-60.

[40]*Id.* at p. 61.

**Conclusion and Recommended Disposition**

Substantial evidence supports the ALJ's decision because a reasonable mind will accept the evidence as adequate to support the decision. Gorman's impairments did not prevent sedentary work before insured status expired. The ALJ made no reversible legal error. For these reasons, the undersigned magistrate judge recommends DENYING Gorman's request for relief (docket entry # 2) and AFFIRMING the Commissioner's decision.

Dated this 4th day of February, 2016.

_____
United States Magistrate Judge